# Southern Holding & Securities Corporation et al. v. Commonwealth.

(Decided June 3, 1932.)

(As Extended on Denial of Rehearing Nov. 25, 1932.)

CLEON K. CALVERT, J. G. BRUCE, KENT V. GAY, J. TUCKER BOWLING and S. M. WARD for appellants.

JOHN H. ASHER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The Southern Holding & Securities Corporation, the Southern Surety Company of Iowa, and Alberta B. Church have appealed from a judgment forfeiting to and vesting in the commonwealth of Kentucky the title of the appellants to certain lands in Perry county, Ky.

On or about the 1st day of January, 1872, there was issued by this commonwealth to William M. Smith and A. F. Baum a number of patents covering in the aggregate about 54,000 acres of land.

On September 7, 1931, the commonwealth of Kentucky, by John H. Asher, commonwealth's attorney for the Thirty-Third judicial district of Kentucky, instituted this action against the appellants and divers others claiming under said patents, alleging in the petition *that the defendants had never at any time after the issue of said patents listed or assessed said property for taxation in Perry County, or elsewhere in the state of Kentucky, and, before the institution of this action, had never paid the taxes that should have been assessed on this property against them or those under whom they claim.* With this petition were filed copies of these patents, and a copy of this petition was posted at the front door of the courthouse, as required by section 4076d, Ky. Stats.

Defendants filed an answer of five paragraphs and one amendment.

Paragraph 1 is a general denial of the petition containing this: "Save as hereinafter admitted."

Paragraph 2 is a denial that the land described in patents 46687 to 46699, inclusive, lies in Perry county,

and alleges the land described in them lies in Leslie county.

Paragraph 3 alleges these patents cover much land that had been previously patented, and that as to these senior patents the patents involved here are void; that the appellants are the owners of the patents involved in this controversy, and at a cost of more than $100,000 they have had them and divers senior patents surveyed to ascertain what lands they have good title to, and they describe by metes and bounds 44 tracts aggregating —— acres to which they say they have good title, and then they say:

"That not until within a year before the institution of this action did they know what lands under the grants described in the petition they really owned, and for that reason, *they say that neither they nor any of their predecessors in title ever listed any lands for purposes of taxation,* but they say that having the information now they are willing to list said lands for taxation and to pay the taxes that may be assessed there against."

In paragraph 4 they allege that from May 19, 1927, until July 29, 1929, these lands were in the custody of W. C. Austin as receiver under an appointment made by the District Court of the United States for the Eastern District of Kentucky, thus covering the assessment dates of July 1, 1927, July 1, 1928, and July 1, 1929, and then they say:

"That during that said period, no owner or claimant of said lands had any right, duty or power to list or assess them for taxation, and that said ancillary receiver had no right, duty or power so to do unless and until he was ordered to so do by said court, and they say that during the time of said receivership, no suit like the present nor any other suit could have been maintained in the Courts of Kentucky, to forfeit the title to said land, or to in any way destrain them for taxes, or to harass said receiver in any way or manner in respect thereof save by leave first had and obtained from said District Court, and they say that no such leave was ever sought or obtained * * * that since neither they nor their predecessors in title had any right, power or authority to list said lands for taxation as of either of said dates neither they nor them be-

came delinquent in that they did not so do, and they say that the said tax years of 1927, 1928 and 1929 are three of the five tax years immediately preceding this action, and that because of the matters and things hereinbefore set forth their title to said lands is not subject to forfeiture and transfer under the Act mentioned in the petition.''

In paragraph 5 they allege:

''That the following persons mentioned as defendants herein, towit: William M. Smith, A. F. Baum, E. N. Yelland and Edwin J. Houston are each dead and were each dead when this suit was instituted, and that as to them this suit should be abated.''

In their amended answer they say:

''That for during the tax year beginning July 1st, 1923, the lands described in the original answer of these defendants was owned and claimed under certain trust agreements by the W. C. Belcher Land Mortgage Company, a corporation created by and existing under the laws of the State of Texas; that at said time the said W. C. Belcher Land Mortgage Company did not know the acreage of said land, nor the number of tracts thereof, which it owned under said trust agreements and on which it should have paid taxes to the State of Kentucky and Perry County, and that at said time the W. C. Belcher Land Mortgage Company had employed surveyors to survey out the land, which it owned under the Smith & Baum Patents described in the petition herein and that said surveyors had reported to W. C. Belcher Land Mortgage Company, that it owned in Perry County, Kentucky under said trust agreements only Seventeen Hundred and Sixty-five (1,765) Acres of land made up of various tracts and says that it listed said Seventeen Hundred and Sixty-five (1,765) Acres of land for taxation as of the first day of July, 1923, at a valuation of $35,300.00.

''These defendants say that the said W. C. Belcher Land Mortgage Company, at said time believed that said Seventeen Hundred and Sixty-five (1,765) Acres of land was all the land, which it owned under said trust agreements in Perry County, Kentucky, within said Smith & Baum Patents and believed that the said Seventeen Hundred and

Sixty-five (1,765) Acres of land was all the land upon which it was obligated to pay taxes to the State of Kentucky and Perry County for said year or for any year and they say that so believing the said W. C. Belcher Land Mortgage Company listed for taxation said Seventeen Hundred and Sixty-five (1,765) Acres of land and that said company at said time lacked funds sufficient to prosecute the surveying of said lands, so as to develop the exact number of tracts and exact number of acres and exact location of such tracts, and that said company at that time acted upon the best information which it had and which it was able to obtain, as to the number of acres it owned in Perry County, Kentucky and which was subject to taxation therein.

"These defendants say that after having listed said lands for taxation the said W. C. Belcher Land Mortgage Company failed to pay the taxes which were due thereon, and they say that on the 15th day of February 1926, the Sheriff of Perry County Kentucky exposed the Seventeen Hundred and Sixty-five (1,765) Acres of land for sale at the front door of the Court House in Hazard, Kentucky for the purpose of discharging the taxes which the said W. C. Belcher Land Mortgage Company should have paid for the tax year beginning July 1st, 1923; and they say that at said sale there being no other bid therefor said lands were bid in and purchased by the State of Kentucky and Perry County and that said lands and the title thereto resided in the State of Kentucky and Perry County from the said 15th day of February, 1926, until the 17th day of November, 1931, when the Southern Surety Company of Iowa and the Southern Holding & Securities Corporation redeemed said lands from said sale, paying to the Clerk of the County Court for Perry County for and on account of the State of Kentucky and Perry County the sum of $1,217.10, the same being the full amount of the taxes, commission, costs of sale, penalty and interest due to the said State and County as of said date on account of said taxes so unpaid.

"These defendants say that the said W. C. Belcher Land Mortgage Company at the time it owned said land under said trust agreement only knew and believed that it owned Seventeen Hun-

dred and Sixty-five (1,765) Acres of land out of the entire patents set out in the petition herein; and they say that having listed what they believed they owned in said patents that they were not liable to a suit to forfeit the title to any thereof on account of the provisions of sections 4076b to 4076k inclusive of the Statutes of Kentucky and they say further that during the time the title to said Seventeen Hundred and Sixty-five (1,765) Acres of Land was resident in the State of Kentucky and in Perry County by reason of said tax sale and the purchase thereof by the said State and County, and same was not liable to be listed for taxation.

''These defendants say that it has been within the last eighteen months and after the expenditure of more than One Hundred Thousand Dollars (100,000.00), that it and those under whom it claims, exclusive of the W. C. Belcher Land Mortgage Company have been able to ascertain exactly what lands in Perry County they own under the patents described in the petition and they have not known exactly what lands they own there until since the first day of July, 1931; and they say that they have first learned this after the expenditure of a very considerable sum of money and the location of many senior grants: and they say that they could not prior to the first day of July, 1931, have listed for taxation in Perry County the exact number of acres of land, which they own therein.

''The defendants say that it is their aim and intention and desire to list for taxation in Perry County the lands which they now know they own therein, and which they have described in their original answer.''

To all of this answer as amended the court sustained a general demurrer, except the second paragraph, and the petition was dismissed as to the lands described in the second paragraph, and the title of the defendants to all the other lands involved in this controversy was forfeited to the commonwealth of Kentucky, and by this appeal the correctness of this action of the trial court is before us.

Paragraph 1 of answer denying the petition ''Save as hereinafter admitted'' amounts to nothing because of subsequent admissions in their answer, and we have italicized a portion of paragraph 3 of their answer in

which they admit that neither they or any of their predecessors in title ever listed any land for taxation. The defendants succeeded in paragraph 2, and the action was dismissed as to those patents.

In paragraph 3 they admit they have not assessed this land, and ask to be excused because as they say they did not know what land they owned.

This which is taken from Eastern Kentucky Coal Lands Corp. v. Com., 127 Ky. 667, 106 S. W. 260, 273, 108 S. W. 1138, 32 Ky. Law Rep. 129, 33 Ky. Law Rep. 49, is a complete answer:

"That which the state taxes is the property of the claimant—not the land. The right to possess, the title or legal right of dominion, is the property which the law protects, and is that property which it taxes. If two persons claim the same land, each having a title, but undetermined which is superior, shall the state stand back until their dispute is settled before it can exact a tax from the owners? For if one of them can lawfully refuse to list his claim, which is his estate in the land, then the other could also.

"The state creates property—that is, the right to a thing—by protecting its use and enjoyment. It maintains police to protect its security and that of its owner, courts in which his rights may be vindicated, and the whole fabric of social government, which gives all value to every kind of property. In return, the state exacts certain personal services from the citizen, and in addition a sum at certain intervals, called a 'tax,' with which to defray the expenses of the government which he enjoys and which protects him in his rights of property. The state, then, may tax whatever is property within its jurisdiction. If one has an imperfect title to land, that is property, and it may be taxed, although another have a more perfect claim to the same land, which is also taxed as his property."

In their briefs filed in this court the defendants say:

"The statute (sections 4076b to 4076k) give this cause birth when one fails to assess, or when one fails to pay for five successive years; either omission will subject the omitted lands to forfeiture.

"If the owner fails to assess, then the cause of action accrues when it was made his duty to assess five times and he failed each time.

"If he fails to pay five successive times, then the action accrues when the taxes were due and he defaulted in payment, the fifth successive time."

We agree that this is a correct statement of the law, and we find the defendants have failed for five years to list this land and to pay the taxes that would have been due thereon if it had been listed, in fact, the defendants admit they have never done either, so all we have to do is to consider their excuses.

### The Federal Receivership.

From May 10, 1927, to July 29, 1929, this land was in the hands of W. C. Austin as reeciver, he having been so appointed in certain ancillary proceedings in the United States District Court for the Eastern District of Kentucky. All this receiver had was the possession of the property, the title was then in the owners, and it was their duty to list it with the assessor for taxation. It would have perhaps not been improper for them to apply to the court for permission to have the receiver list it, or to be permitted to list it themselves; but to see that it is listed, they must. The property was liable for listing for assessment in their names. See section 4049, Ky. Stats. See, also, Coy v. Title Guarantee & T. Co. (C. C. A.) 220 F. 90, L. R. A. 1915E, page 211.

We have no question here presented of the priority of any tax levied on such assessment as the receivership is at an end, it has been lifted, and so far as the assessment of this property or the payment of the taxes thereon is concerned, the situation is just the same as if this federal receivership had never been. The duty was on the defendants to assess this property for taxation and to pay the taxes upon it, before this receivership, the title remains with them throughout the receivership, and that duty rested upon them after the receivership with undiminished rigor, and the defendnats must suffer the penalty of their failure to act in these two important particulars. The commonwealth alleged that the defendants failed in the years 1925, 1926, 1927, 1928, 1929, 1930, 1931, and 1932 to list this land for taxation and to pay the taxes thereon, and the defendants admit this is true; therefore they must suffer the penalty, the federal receivership being no excuse.

### Title in State and County.

The defendants allege this land or some of it was

in July, 1923, assessed in the name of the W. C. Belcher Land Mortgage Company, that the taxes levied on this assessment were not paid and the land was sold to the state and county and the title rested in the state and county from February 15, 1926, when it was sold, until November 17, 1931, when the defendants redeemed it, and for this reason they say it was not liable for either taxation or assessment during that time. We do not have to decide this question, for by section 4154, Ky. Stats., if all steps regarding this sale and subsequent thereto were regular, then two years thereafter the title vested absolutely in the state and county, and the only way the defendants could get their title back is by purchase from the auditor, at public sale as provided in section 4154, and the defendants had no right to redeem it in the manner they attempted to do on November 17, 1931, and, despite their attempt and their payment, the title, if it was then matured in the state and county, is still there and the defendants have nothing to assert a right to and cannot complain. If for any reason the title had not then matured in the state and county, then the defendants had a right to redeem it in the manner they did; but their right to redeem the land had remained during all this time liable to assessment and taxation, and if they did not assess it and pay the taxes they must suffer the penalty.

After land is sold to the state and county for taxes, all the defendants have left is their right to redeem it, but they must list that for taxation and pay the taxes thereon. This status will continue until the title becomes vested in the state and county; then of course, after the title is vested in the state and county, there is nothing left in the defendants to be assessed or to impose taxes on, nor any title subject to forfeiture. Thus after the title has matured in the state and county there is nothing left in the defendants to tax, for not only is their title gone, but their right of redemption is gone, and there is but one way to divest the state of its title, and that is by the public sale outlined in section 4154, Ky. Stats. See Brown's Ex'x v. Greene, 184 Ky. 300, 211 S. W. 860; Grays v. Mills, 196 Ky. 122, 244 S. W. 291.

When these defendants undertook to redeem on November 17, 1931, they did not proceed as outlined in section 4154; therefore, if the title was then mature in the commonwealth they got nothing and the title remained in it, or if the title was not then matured and

they had a right then to redeem in the manner they did, then their right of redemption for all the years from February 15, 1926, to that date, was a proper subject for assessment and taxation, and as these defendants are relying upon the redemption they undertook to make on November 17, 1931, they can only do so upon the idea that they then had a right to redeem, and if they had a right to redeem they also had a liability to assess that right and to pay taxes thereon.

No matter which may be the case, the answer of the defendants states no defense, for if the title had matured in the commonwealth, the defendants got nothing by their attempted redemption, and if it had not matured and they had a right to redeem, then the defendants must lose whatever title they have for failure to list or assess that right for taxation and to pay the taxes thereon, for they have never done so.

The defendants contend they were entitled to a jury trial, which would be true if there were by their answer asserted any defense upon which they could rely, but their answer states no defense; therefore there was no issue to be submitted to a jury.

The judgment is affirmed.